IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FRED DAILEY & MARTHA          :
DAILEY,                       :          Case No. 4:14-cv-1627
                              :
        Plaintiffs,           :
                              :
    v.                        :          (Judge Brann)
                              :
ENCORE MEDICAL                :
CORPORATION, ENCORE           :
MEDICAL, L.P., DJO SURGICAL   :
and DJO INCORPORATED,         :
                              :
        Defendants.           :

## MEMORANDUM
December 10, 2014

Defendants Encore Medical Corporation, Encore Medical, L.P., DJO

Incorporated, and DJO Surgical (hereinafter, "Defendants") filed a Motion to

Dismiss Plaintiffs Fred and Martha Dailey's Complaint for failure to state a claim

upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  Defs.' Mot. Dismiss, Sept. 3, 2014, ECF No. 3 (hereinafter

"Defs.' Mot.").  Plaintiffs' Complaint, filed August 18, 2014 in the Court of

Common Pleas of Centre County, Pennsylvania , alleges one count for negligence,

based on various theories of liability, one count for manufacturing defect based

upon a theory of strict liability, and one count for Mrs. Dailey's loss of consortium.

Pl.'s Compl., Aug. 18, 2014, ECF No. 1 (hereinafter "Pl.'s Compl.").  Defendants

1

seek to dismiss Plaintiff's Complaint against them in its entirety.  This Court

retains diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Consequently,

Pennsylvania substantive law applies.  *See, e.g., Erie R. Co. v. Tompkins*, 304 U.S.

64, 91-92 (1938).  For the reasons discussed, Defendants' Motion to Dismiss is

granted in its entirety because Plaintiffs' Complaint is barred by the applicable

statute of limitations.

## I. BACKGROUND

On August 23, 2013, Plaintiffs initiated the above-captioned civil action by

filing a Writ of Summons in the Court of Common Pleas of Centre County,

Pennsylvania.  On August 18, 2014, Plaintiffs filed their Complaint in the Court of

Common Pleas of Centre County, Pennsylvania, alleging one count of negligence

based upon various theories of liability, one count of strict liability due to

manufacturing defect, and one count of loss of consortium.  On August 20, 2014,

Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1332(a),

1441(a), and 1446.  On September 3, 2014, Defendants moved to dismiss

Plaintiffs' Complaint in its entirety.

The following allegations are taken from Plaintiffs' Complaint and are

accepted as true for the purposes of the instant motion.

This case arises from the implantation and subsequent failure of an artificial

knee replacement device produced by the Defendants and implanted into the

Plaintiff Fred Dailey's left knee on or about August 15, 2005. Pl.'s Compl. ¶ 8-9.

The surgery was performed by Kenneth Cherry, M.D., at the Mount Nittany

Medical Center. *Id.* ¶ 9.  Prior to the surgery, Plaintiff was provided no indication

or warning by Defendants that the artificial knee's post tibial insert and/or

polyethylene was destined to fail or had any particular life expectancy. *Id.* ¶ 17.

This was Plaintiff's second knee replacement, the first being performed by Dr.

Cherry at some point in 1999. *Id.* ¶ 6-7.  Though the knee replacement initially

functioned satisfactorily, while out at a restaurant at some point in the summer of

2011, Plaintiff felt like his left knee was going to give out on him. *Id.* ¶ 10.  X-rays

that were taken on July 28, 2011 did not disclose that there was anything wrong

with the implant. *Id.* ¶ 11-12.  Nevertheless, Dr. Cherry recommended a revision,

which occurred on August 23, 2011. *Id.* ¶ 13.

> Plaintiff's admittance records from Mt. Nittany Medical Center state that:
>
> [Plaintiff] underwent poly exchange of [the left] knee in 2005.  [Plaintiff] presents to the office with similar symptoms.  He is having pain and instability he also felt a loud pop while at a restaurant.  He has had decreased range of motion since that time.  X-rays in the office did show a questionable lucency.  Being that his tibial insert has Failed twice he is now scheduled for total revision.

*Id.* ¶ 14.  It was during this scheduled revision that it was discovered that the tibial

post of the implant had broken. *Id.* ¶ 15.  Specifically, after the revision Dr. Cherry

noted, "The knee showed obvious failure of the tibial polyethylene." *Id.* ¶ 16.  As a

result of the failure of the tibial post and the subsequent surgery, Plaintiff has

3

suffered pain, discomfort, and instability in his left knee, and past and ongoing medical treatment, which will continue indefinitely. *Id.* ¶ 23(a)-(f).

## II. DISCUSSION

### A. Motion to Dismiss Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). However, "the tenet that a court must accept as true all of the [factual] allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). In ruling on such a motion, the court primarily considers the allegations of the pleading, but is not required to consider legal conclusions alleged in the complaint. *Kost*, 1 F.3d at 183. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. At the motion to dismiss stage, the court considers whether plaintiff is entitled to offer evidence to support the allegations in the complaint. *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000).

A complaint should only be dismissed if, accepting as true all of the allegations in the amended complaint, plaintiff has not pled enough facts to state a

claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-664.

"In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading." *Hellmann v. Kercher*, No. 07-1373, 2008 WL 1969311 at * 3 (W.D. Pa. May 5, 2008) (Lancaster, J.). Federal Rule of Civil Procedure 8 "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds on which it rests,'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 554 (quoting *Conley v. Gibso*n, 355 U.S. 41, 47 (1957)). However, even under this lower notice pleading standard, a plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of an entitlement to relief. *See Hellmann*, 2008 WL 1969311 at *3. Instead, a plaintiff must make a factual showing of his entitlement to relief by alleging sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Twombly*, 550 U.S. at 561. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not "shown" - - "that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)).

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law." *Id.* at 326.  If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Id.* at 327.

## B. Statute of Limitations

Defendants first argue that Plaintiffs' Complaint must be dismissed in its entirety because it was filed after the applicable two-year statute of limitations for personal injury claims.  They contend that the statute of limitations began to accrue at the latest during Mr. Dailey's July 28, 2011 examination, because it was on that date that Mr. Dailey knew or reasonably should have known that his injury was a result of the failed tibial insert of his knee implant.

Plaintiffs counter first that their Complaint cannot be dismissed at this stage in the litigation because the time limitations alleged on the face of the Complaint do not clearly bar their claims.  Furthermore, Plaintiffs contend that the statute of limitations should be tolled by the discovery rule because the cause of Mr. Dailey's knee issues remained unclear at the July 28, 2011 appointment, given that the x-rays revealed no problems and the diagnosis by the physician's assistant was

uncertain; therefore, Mr. Dailey could not reasonably have known the actual cause of the injury until his surgeon discovered the broken tibial post on August 23, 2011.

### 1. Defendants' Reliance on Extrinsic Evidence

As an initial matter, Defendants rely in their Motion to Dismiss on a set of medical notes from the University Orthopedics Center (hereinafter "UOC") regarding Mr. Dailey's July 28, 2011 consultation. This set of notes is different than the admittance notes alluded to by Plaintiffs in their Complaint.

"The general rule is that 'a district court ruling on a motion to dismiss may not consider matter extraneous to the pleadings.'" *In re Rockefeller Center Props., Inc. Secs. Litig.*, 184 F.3d 280, 292 (3d Cir. 1999) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). However, the Third Circuit has carved out an exception to this general rule, that is, when an extrinsic document is "integral to or explicitly relied upon in the complaint." *Burlington Coat*, 114 F.3d at 1426.

The Court cannot consider these UOC notes in deciding the present Motion to Dismiss because, contrary to Defendants' assertions, Plaintiffs neither explicitly rely upon these notes in their Complaint, nor is this document integral to the underlying complaint that the artificial knee was negligently made or contained a manufacturing defect. Rather, the medical notes refer only to what was discussed

7

during the July 28, 2011 examination of Mr. Dailey and are relevant only to the issue of the statute of limitations.

### 2. Application of the Statute of Limitations

Rule 12(b) does not explicitly allow for the assertion of a statute of limitations defense in a motion to dismiss. Notwithstanding, the defense may be raised on a motion to dismiss for failure to state a claim only if the time alleged in the statement of the claim demonstrates on the face of the complaint that the cause of action has not been brought within the applicable statute of limitations period. *See Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174(3d Cir. 1978); *see also Hanna v. U.S. Veterans' Admin. Hospital*, 514 F.2d 1092, 1094 (3d Cir. 1975).

Under Pennsylvania law, claims for personal injury are governed by a two-year statute of limitations. *See* 42 PA. CONS. STAT. § 5524. This includes causes of action for negligence and strict liability, like those asserted in Plaintiffs' Complaint. *Id.* § 2254(7). This two-year statute of limitations period is similarly applicable to Plaintiffs' loss of consortium claim, which is governed by the statute of limitations period of the underlying personal injury claims. *See Patterson v. Am. Bosch Corp.*, 914 F.2d 384, 386 n. 4 (3d Cir. 1990); *see also Darr Const. Co. v. W.C.A.B.*, 552 Pa. 400, 408 (Pa. 1998) ("It is well-settled that the claim is derivative . . ."). Unless tolled by the discovery rule, a claim accrues "as soon as the right to institute and maintain a suit arises." *Pocono Int'l Raceway, Inc. v.*

8

*Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983).  In most tort actions, such as the one in the case at bar, accrual occurs at the moment the injury is sustained. *See Debiec v. Cabor Corp.*, 352 F.2d 117, 129 (3d Cir. 2003).

In this case, the statute of limitations on Plaintiffs' personal injury and loss of consortium claims began to run during the summer of 2011, when Mr. Dailey was out at a restaurant and felt like his left knee was going to give out on him. That was the moment Plaintiff alleges the injury occurred.  It was not until over two years – on August 23, 2013 – later that Plaintiffs initiated the current action. As such, their claims would be barred unless the discovery rule applies to toll the statute of limitations.

### 3.  Discovery Rule

The discovery rule applies to toll the statute of limitations "in any case where a party neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises." *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005).  A plaintiff who is asserting the application of the discovery rule bears the burden of proof. *See Cochran v. GAF Corp.*, 666 A.2d 245, 249 (Pa. 1995).

On the face of the Complaint, the discovery rule is clearly applicable, as Plaintiff claims that he was not aware of the cause of his injury when it initially occurred sometime in the summer of 2011.  However, the parties dispute how long

the discovery rule acted to toll the relevant statute of limitations. This Court finds

it is clear from the face of the Complaint that the statute of limitations was only

tolled until Mr. Dailey's examination on July 28, 2011; therefore, the cause of

action began to accrue.

In their Complaint, Plaintiffs quote from the admittance records of Mt.

Nittany Medical Center regarding Mr. Dailey's examination on July 28, 2011:

> Fred is a pleasant 77-year-old male who had his left knee replaced by Dr.
> Cherry several years ago. Patient then underwent poly exchange of that
> knee in 2005. Patient presents to the office with similar symptoms. He is
> having pain and instability he also felt a loud pop while at a restaurant. He
> has had decreased range of motion since that time. X-rays in the office did
> show a questionable lucency. *Being that his tibial insert has Failed twice he
> is now scheduled for total revision.*[1]

Pls. Compl. ¶ 14 (emphasis added). Merely stating in the next paragraph that

"[d]uring th[e] August 23, 2011 revision, it was then discovered that the tibial post

of the Encore implant had broken" does not negate the facts that Plaintiffs

themselves have expressly established, notably, that the doctor or treating medical

personnel knew the cause of Mr. Dailey's injury at the time of the initial

examination, or at least prior to the date of the revision surgery. *Id.* ¶ 15. These

admittance notes demonstrate that Mr. Dailey was either made aware of the cause

of his injury by his physician, in which case he had actual knowledge, or that he

---

[1] The Complaint does not clarify on what date these admittance notes were created, and to what examination they refer. They are included directly after the discussion of the July 28, 2011 examination, which leads this Court to believe that the notes refer to the examination on July 28, 2011. However, even if the notes were created as late as the morning of Plaintiff's surgery on August 23, 2011, they make clear that the surgery was scheduled for the explicit purpose of replacing the failed tibial insert, leading to the logical inference that the cause of the injury was known prior to the date of surgery.

should reasonably have known the cause of his injury based on the fact that his

treating physician had actual knowledge of the cause of the injury.[2]

It is true that "when a court is presented with the assertion of the discovery

rule's application, it must address the ability of the damaged party, exercising

reasonable diligence, to ascertain that he has been injured and by what cause."

*Fine*, 870 A.2d at 858.  In this context, "reasonable diligence is not an absolute

standard, but is what is expected from a party who has been given reason to inform

himself of the facts upon which his right to recovery is premised." *Fine*, 870 A.2d

at 858.  In other words, the question is what should the plaintiff have known, "by

use of the means of information within his reach, with the vigilance the law

requires of him." *Scranton Gas & Water Co. v. Lackawanna Iron & Coal*, 31 A.

484, 485 (Pa. 1985).  Moreover, it is true that ordinarily the issue of diligence is

one for determination by a jury. *See id*.  However, "where the facts are so clear that

reasonable minds cannot differ, the commencement period may be determined as a

matter of law." *Cochran v. GAF Corp.*, 666 A.2d at 248.

In the matter at hand, it is clear from the face of the Complaint and admitted

by Plaintiffs that Mr. Dailey did in fact know of the injury.  Mr. Dailey argues

today that he did not know of, nor could he reasonably have known of, the cause of

---

[2] Paragraph 14 similarly does not detail which hospital employee created the admittance notes.  However, even if it was an assistant or a nurse who wrote the notes, the analysis remains the same.  It is clear that someone with intimate medical knowledge of Mr. Dailey's case was aware that the tibial component of the artificial knee had failed.  Because that person had actual knowledge of the cause of Mr. Dailey's injury, whoever he or she may have been, Mr. Dailey could have reasonably discovered that cause.

his injury.  However, the facts are clear that the physician or someone else who was treating Mr. Dailey was aware of the cause of his injury.  This Court can think of no situation in which, absent explicit wrongdoing on the part of the physician or treating medical employee, which is not alleged here, a patient would be unable to determine the cause or possible cause of his injury if the physician was in fact aware of that cause.  And, indeed, Mr. Dailey visited his physician with the express purpose of determining the cause of his injury.

Consequently, based upon the admittance notes explicitly quoted in Plaintiffs' Complaint, this Court finds that reasonable minds would not differ in finding that Mr. Dailey should have known the cause of his injury, upon the exercise of reasonable diligence, prior to his revision surgery on August 23, 2011.

## III. CONCLUSION

In sum, and, in consideration of the preceding discussion, Defendants' Motion to Dismiss is granted in its entirety; Plaintiffs' Complaint is barred by the applicable statute of limitations.

BY THE COURT:


/s Matthew W. Brann
Matthew W. Brann
United States District Judge